In the Matter of the Claim of ETTA THOMPSON, Respondent, against
THE CITY OF BINGHAMTON, Appellant.
STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 11, 1926.

**Workmen's compensation — accidental injury — claimant's intestate was janitor of school and was required to go to school building when fire alarm sounded — fire alarm sounded, though there was no fire, and intestate was taken to building in automobile — intestate was suffering from heart disease — intestate became greatly excited and after walking about building for few minutes, dropped dead — death was caused by acute attack of dilation of heart — accidental injury was suffered.**

The claimant's intestate, the janitor of a school building in the city of Binghamton, suffered an accidental injury resulting in his death, since it appears that as a part of his duties he was required to go to the schoolhouse in case a fire alarm was sounded; that a fire alarm was sounded though in fact there was no fire, and the intestate was taken to the schoolhouse in an automobile; that, at the time, the intestate was suffering from chronic myocarditis; that he became greatly excited after reaching the school building, and, after walking about the building for a few minutes, dropped dead. He died as the result of an acute attack of dilation of the heart.

H. T. KELLOGG, J., dissents, with opinion.

APPEAL by The City of Binghamton from an award of the State Industrial Board, made on the 17th day of December, 1925.

*John J. Irving* [*Herbert H. Ray* of counsel], for the appellant.

*R. L. Eckelberger* [*Bruce L. Babcock* of counsel], for the claimant.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the State Industrial Board.

VAN KIRK, J. The claim is for death benefits and is made by the widow of James F. Thompson, who was the janitor of a school. The city of Binghamton is the employer. Thompson's duties were to perform the usual work of a janitor and, in case of a fire alarm at the schoolhouse, to go there. On Sunday, April 6, 1924, there was such a fire alarm. Though in fact there was no fire, the alarm was real. Thompson was at home at the time, but was called and taken to the school building in an automobile. When he reached the school building he hurried in as fast as he could. It was perhaps thirty feet from where the automobile stopped to the door. He unlocked the door, went down a pair of stairs and into the boiler room. He was very much excited; two alarm bells were ringing, one in the boiler room and one upstairs. He attempted to disconnect the electric system from the bell in the boiler room, but was so nervous that he could not do it; Heslip, who was with him, disconnected it. Thompson sat down, but very soon started out into the corridor. Instead of going upstairs to shut off the other alarm, he went into the boys' lavatory; he was walking with a cane. Heslip heard the cane drop and looked in time to see Thompson fall. It was in the neighborhood of five minutes from the time the boiler room alarm was shut off until he dropped. It is but a short distance from the boiler room into the boys' toilet where he fell. The whole distance he walked was possibly 150 feet. He had been for two years or more suffering from heart trouble and hardening of the arteries. There was testimony by physicians that the circumstances described — the fire alarm, his hurrying to the school building in answer thereto, his activities, and nervous excitement — were sufficient causes to bring on an acute attack of dilation of the heart and death. The finding is that his already weakened heart, because of chronic myocarditis, gave out, and caused him to die a short while after he had reached the school building, his death being naturally and unavoidably the result of the unusual excitement — and unusual strain and exertion, to which he was subjected when called upon to answer said fire alarm.

The one objection to the award is that Thompson did not receive an accidental injury within the meaning of the Workmen's Compensation Law. For a well man he made no excessive physical exertion, was subjected to no excessive physical strain. He suffered no traumatic injury of any kind. But he had a diseased heart

and had to walk with a cane. The cause of his death was his exertion and the strain upon his heart due to his excitement. The fact that the alarm was false means nothing in the case. His excitement due thereto was as real as if there had been an actual fire. His injury was sustained while he was in the line of his duty; that is, in the course of his employment, and it fell upon him because of what occurred within the field of his employment, and because of what he did to serve the interest of his employer there. Performance of this service and the attending happenings so excited him and accelerated his heart action that he died. Is such an accidental injury? The same question was presented under very similar facts in *O'Connell* v. *Adirondack Electric Power Corp.* (193 App. Div. 582) and was answered in the negative. In that case the employee died of acute dilation of the heart brought on by mental effort, nervousness and excitement. There had been a breakdown of electric wires in the lines of his employer and he was at the time in charge in the office. The facts in that case which differ from this are: (1) That there was no physical exertion, the deceased was sitting in his office chair from the time the break of the electric lines happened till the time of his death; (2) an hour passed between the time the break was repaired and his death; (3) such accidents upon the lines were of common occurrence. That case was not reviewed by the Court of Appeals. Whether or not there is in principle a substantial distinction between that case and the present case we think under the authority of later cases both in this court and in the Court of Appeals, there was in the present case an accidental injury sustained by deceased. In *Pickerell* v. *Schumacher* (215 App. Div. 745; affd., 242 N. Y. 577) the claimant was driving a hearse up a grade. He applied his emergency brake to stop the hearse, but the brake failed to hold and the hearse started to back down the hill. Claimant turned the steering wheel and, after going back about twenty feet, the hearse ran against a bank at the side of the road, where it stopped without further mishap. Claimant suffered a cerebral apoplexy the following morning. There was no physical injury to him other than the excitement. It requires little strain ordinarily to turn the steering wheel of an automobile. In no sense did that claimant suffer a traumatic injury or physical strain. It was an accident that the brake failed to hold, but not an accident to him. The only accident to him was the mental nervous excitement due to the failure of the brake and the consequent backing down hill of the hearse; and the apoplectic stroke did not occur until the following morning. Certainly Pickerell made no greater physical exertion in controlling the hearse than Thompson in the

present case when, of necessity using a cane, he hurried to the automobile and from it into the building, down a pair of stairs and into the boiler room. *Matter of Connelly* v. *Hunt Furniture Co.* (240 N. Y. 83) is another interesting case in which what constitutes an accidental injury is considered. It was a case of infection and the court said: " We think the injection of the poison was itself an accidental injury within the meaning of the statute." Within the comments and reasoning in the opinion in that case we think that that which happened to Thompson in the present case was an accidental injury within the meaning of the statute. Common speech would describe it as an accident. It was a mishap, unlooked for, unexpected and happened without design on the part of the deceased. The time and place is fixed; the cause of the death is determined and the evidence sustains the determination. The excitement to which Thompson was subjected and his activity undoubtedly hastened his death, brought his diseased heart condition to the climax. The over-excitement and exertion were the real proximate cause of his death. The acute dilation of the heart was the accidental injury.

The award should be affirmed, with costs.

All concur, except H. T. Kellogg, J., dissenting with an opinion.

H. T. Kellogg, J. (dissenting). Mr. Justice Van Kirk is clearly asking us to overrule our decision in *O'Connell* v. *Adirondack Electric Power Corp.* (193 App. Div. 582). He seems to think that the decision in that case is not consistent with our later decision in *Pickerell* v. *Schumacher* (215 App. Div. 745). If there be an inconsistency in the two holdings it seems to me that the decision in the *Pickerell* case should yield to the decision in the *O'Connell* case rather than that the latter should yield to the former. It was held in the *Pickerell* case that a claimant suffering from cerebral apoplexy caused by fright and excitement might recover compensation from his employer although he sustained no physical injury. The decision was clearly in conflict with the decision in *Mitchell* v. *Rochester Railway Co.* (151 N. Y. 107). In that case Judge Martin, writing for the court, stated the law as follows: " While the authorities are not harmonious upon this question, we think the most reliable and better considered cases, as well as public policy, fully justify us in holding that the plaintiff cannot recover for injuries occasioned by fright, as there was no immediate personal injury." The question was one of proximate cause. Surely if, in a negligence case, no causal relation can be found between an accident and damages caused by pure fright, no such relation can be discovered, where the facts are the same, in a workmen's

compensation case. Certainly we took a very advanced position in the *Pickerell* case. However, I do not think that the *Pickerell* case is in conflict with the *O'Connell* case. In the *Pickerell* case an accident did happen to the claimant. The hearse which he was driving started to back down hill and carried the claimant with it. Thus something did happen to the claimant. If a man leaping from an upper story window of a burning building into a fireman's net is so frightened by the fall that he dies, although he receives no immediate physical injury from striking the net, it might fairly be reasoned that he has sustained an accident causing death. That is substantially the *Pickerell* case. If, on the other hand, he stands on the street watching a building burn and is so frightened at the fire, because he owns the building, or because it holds an occupant near and dear to him, that he falls dead from heart disease, it does not seem to me that it could properly be argued that the man has sustained an accident. That is the *O'Connell* case. In this case the employee was merely frightened by the sound of a fire alarm. There is no proof that he walked about more hurriedly than an ordinary pedestrain would walk. His death from heart disease was produced solely by his fright. Nothing whatsoever happened to him. It strikes me that to be consistent with our decision in the *O'Connell* case and to be logical we should reverse the award.

Award affirmed, with costs to the State Industrial Board.